UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DONALD J. HIJECK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| VS. | ) | |
| | ) | 3:07-CV-0530-G |
| MENLO LOGISTICS, INC. d/b/a | ) | |
| MENLO WORLDWIDE LOGISTICS, | ) | **ECF** |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are the following: (1) the motion of the defendant, Menlo Logistics, Inc. ("Menlo" or "the defendant"), for summary judgment; (2) Menlo's motion to strike certain portions of the plaintiff, Donald J. Hijeck's ("Hijeck" or "the plaintiff"), summary judgment evidence; (3) Hijeck's second motion for sanctions and to strike portions of the defendant's summary judgment evidence; and (4) Menlo's motion for leave to file evidence in support of its reply brief. For the reasons set forth below, Menlo's motion for summary judgment is granted, Menlo's motion to strike is denied as moot, Hijeck's motion to strike is denied (and his companion motion for sanctions is denied as moot), and Menlo's motion for leave is denied as moot.

# I. BACKGROUND

The plaintiff, Don Hijeck, was hired in January of 2001 by Con-Way Logistics ("CLI"). *See* Plaintiff's Brief in Support of Response to Motion for Summary Judgment ("Plaintiff's Response") ¶ 3. Hijeck's employment with Menlo began on or about March 27, 2005, when Menlo merged with CLI. *Id.* ¶ 4. Hijeck was employed as a Logistics Manager III at the CLI/Menlo warehouse in Dallas, Texas, (the "Dallas facility") until he was terminated in April of 2006. *See* Defendant's Brief in Support of Motion for Summary Judgment ("Defendant's Motion") at 5. Menlo is a full-service third party logistics provider for commercial and industrial enterprises, providing supply chain management solutions for its customers, including transportation management and warehousing. *Id.* at 2. During his employment with CLI, Hijeck received two disciplinary actions related to his job performance. *See* Deposition of Don Hijeck ("Hijeck Depo") Exhibits 9, 10, *located in* Appendix to Defendant's Brief in Support of Motion for Summary Judgment ("Defendant's Appendix") at 44-45.

## A. Menlo and CLI Merge

CLI and Menlo merged in March of 2005, and as a result of the merger Menlo took over management of CLI's Dallas Facility and CLI's Atlanta Facility. *See* Affidavit of Christine Pedalino ("Pedalino Affidavit") ¶ 6, *attached to* Defendant's Appendix as Exhibit 1. Prior to the merger, Menlo already had a facility in Atlanta,

as well as a warehouse in Coppell, Texas (the "Coppell facility"). *Id.* ¶ 8. Based on projected business requirements, Menlo decided to consolidate its operations in Georgia and Texas, and as a result, Menlo determined that only one site manager[1] in each location was needed to manage the operations of the combined facilities. *Id.* In September of 2005, Menlo merged the former CLI Atlanta facility with the Menlo Atlanta warehouse facility. Due to the merger, on August 25, 2005, Charles Tracy, the thirty-seven year-old Logistics Manager III of the former CLI Atlanta facility, was terminated from Menlo. *Id.* ¶ 9.

Then, in January of 2006, Menlo consolidated its Texas operations, merging the warehouse facilities in Coppell and Dallas into one operation. *Id.* ¶ 10. Menlo again decided to eliminate a managerial position as a result of the merger, and in January of 2006 the plaintiff was informed that his job as a Logistics Manager III no longer existed. *Id.* ¶¶ 10-11.

## B. Hijeck Searches for New Employment at Menlo

However, Menlo continued to employ Hijeck for several months at the Coppell facility after the merger. Pedalino Affidavit ¶ 11. Additionally, Menlo offered Hijeck a position as the Logistics Manager III of Menlo's Charlotte, North Carolina warehouse facility, which Menlo claims Hijeck declined. *Id.* ¶ 12. Hijeck disputes

---

[1]     The parties use the term "site manager" and "Logistics Manager III" interchangeably. The two terms apparently refer to the same job description within Menlo.

being offered the position.  *See* Affidavit of Donald J. Hijeck ("Hijeck Affidavit") ¶ 14, *attached to* Appendix to Plaintiff's Brief in Support of His Response to Defendant's Motion for Summary Judgment ("Plaintiff's Appendix") at Exhibit 1.

After learning that his position was being eliminated, Hijeck applied for several other facility management positions within Menlo, including the "Senior Logistics Manager" positions at Menlo's Oregon facility and Coppell facility, the "Global Account Management" position at a Colorado Menlo facility, "Logistics Manager" for a Menlo account in New Jersey, as well as the "Site Manager" position for the consolidated Coppell facility.  Defendant's Motion at 17.  Hijeck was not selected for any of the positions he applied for.  As a result, Hijeck alleges, Menlo "discriminated against [Hijeck] because of his age when it failed to continue his employment in any of the positions where he applied."  Plaintiff's Response at 2.

The Senior Logistics Manager positions at the Coppell facility and the Oregon facility would have been a two-level promotion for the plaintiff.  Defendant's Motion ¶ 19.  Menlo hired Andy Geisler for the Oregon position.  Geisler was over the age of forty, and Menlo states the he was selected "because he had more direct experience in Menlo's warehouse operations."  *See* Pedalino Affidavit ¶ 16.  Menlo selected Patrick O'Connell for the Senior Logistics Manager position at the Coppell facility.  *Id.* O'Connell was under the age of forty at the time he was hired.  *Id.*

Both the Logistics Manager position in New Jersey and the Site Manager position at the Coppell facility were similar in responsibility. *See* Defendant's Motion ¶ 20. The Logistics Manager position in New Jersey was filled by Nicholas Lavoritano, who was over the age of forty when he was hired. *Id.* The Coppell Site Manager position was filled by Randy Weygandt in December of 2005. Weygandt was over the age of forty at the time he was hired, and Hijeck alleges Weygandt was unqualified for the position because he lacked a college degree. *See* Plaintiff's Response ¶ 40. However, Weygandt resigned shortly after being hired to take a position with another company. Defendant's Motion ¶ 22. Subsequently, Menlo hired Adam Lapino to replace Weygandt. *Id.* ¶ 23. Lapino was under the age of forty at the time he was hired. *Id.* Hijeck was then asked to train Lapino for his new position. Hijeck notes that he was the only employee from the former Dallas facility who was not subsequently employed at the consolidated Coppell facility. Plaintiff's Response ¶¶ 49, 52.

Hijeck also complains that Menlo failed to retain documentation related to his term of employment and his search for a new position, and additionally that Menlo failed to abide by certain company policies and procedures during his job search. *See* Plaintiff's Response ¶¶ 25, 29, 30, 33, 38, 46, 48, 51, 56, 66, 70. Menlo notes that the Global Account Manager position in Colorado was never filled "due to projected business requirements." Defendant's Reply at 8-9. Hijeck claims he received no

response to his application, and was offered no explanation as to why he did not receive the Colorado position.  Plaintiff's Response ¶ 60.

Hijeck was discharged from his employment with Menlo on April 7, 2006.  At the time of his termination, Hijeck was over the age of forty.  Following his termination, Hijeck filed this suit alleging discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 612 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.001 *et seq.*  Menlo now moves for summary judgment.

## II.  ANALYSIS

### A.  Evidentiary Standard on Motion for Summary Judgment

A party seeking summary judgment may rely on any form of evidence listed in Rule 56(c).  See *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  While the form of the summary judgment evidence need not be admissible, the content of the evidence must meet evidentiary requirements.  See *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997) (finding that the hearsay statements in an affidavit were "incompetent summary judgment evidence").  Thus, for example, while an affidavit has limited admissibility at trial, it is sufficient evidence to support or defeat a motion for summary judgment even though inadmissible statements in the affidavit, such as hearsay statements, may not be considered by the court. See *id*.

1. *Plaintiff's Motion to Strike the Affidavit of Christine Pedalino*
   *for Lack of Competency and Hearsay*

In support of its motion for summary judgment, Menlo offers the affidavit of a human resources manager, Christine Pedalino. *See* Defendant's Motion at 2; Pedalino Affidavit ¶ 1. The plaintiff has moved to strike the Pedalino affidavit in its entirety, arguing that because the affidavit is based on hearsay it is improper summary judgement evidence. *See generally* Plaintiff's Second Motion for Sanctions and Motion to Strike Affidavit and Other Evidence with Brief in Support ("Plaintiff's Motion to Strike"). Hijeck argues that the Pedalino affidavit does not meet the requirements for summary judgment affidavits set forth by FED. R. CIV. P. 56(e),[2] and that the affidavit was "presented in bad faith, justifying sanctions under Rule 56(g)." *Id.* at 2. For the reasons discussed below, the plaintiff's motion to strike the Pedalino affidavit is denied, and the motion for sanctions is denied as moot.

During the period of time relevant to this case, Pedalino, as the "Area Human Resources Manager" for Menlo, was responsible for "reviewing the [company's] policies and procedures" and "investigating the circumstances involving [Hijeck's] termination from Menlo." Pedalino Affidavit ¶¶ 1, 2. Pedalino bases her affidavit on personal knowledge and company files. *Id.* Additionally, Pedalino has been designated as Menlo's corporate representative under Rule 30(b)(6) of the Federal

---

[2]     FED. R. CIV. P. 56(e)(1) provides: "A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. . . ."

Rules of Civil Procedure. The purpose of Rule 30(b)(6) is to allow a corporation to present testimony through a representative who, after being prepared, "presents the corporation's 'position' on the topic." *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (quoting *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)).

Hijeck argues that Pedalino's affidavit was not based on personal knowledge. However, it is not necessary that Pedalino have direct, personal knowledge of each and every fact discussed in her affidavit or her deposition. When a corporation offers the testimony of a representative, "the corporation appears vicariously through that agent." *Resolution Trust Corporation v. Southern Union Company, Inc.*, 985 F.2d 196, 197 (5th Cir. 1993). The authority of a corporate representative extends not only to facts, but also to the subjective beliefs and opinions of the corporation. *Brazos*, 469 F.3d at 433.

A similar issue was addressed by the Fifth Circuit in *Diamond Offshore Company v. A & B Builders, Inc.*, 302 F.3d 531, 544 n.13 (5th Cir. 2002). In *Diamond*, the nonmovant challenged the sufficiency of an affidavit used in support of a motion for summary judgment, arguing that the affidavit was not based on personal knowledge and that the factual statements included in the affidavit were hearsay. *Id.* Based on the affiant's position within the company and the fact that he had "reviewed . . . records as they pertain[ed] to information contained in the affidavits," the Court of

Appeals found that the district court did not abuse its discretion when considering the information contained in the affidavit. *Id.* Pedalino's role with Menlo as the Area Human Resources Manager places her in a position similar to the affiant in *Diamond*, and she is qualified to speak for the corporation on matters related to Hijeck's employment with Menlo. Therefore, Hijeck's motion to strike the Pedalino affidavit is denied, and in consequence, Hijeck's motion for sanctions is denied as moot.

### 2. *Plaintiff's Motion to Strike Specific Portions of the Pedalino Affidavit for Lack of Personal Knowledge, Conclusions, and Hearsay*

Hijeck makes numerous specific objections to the Pedalino affidavit, seeking to strike particular paragraphs on grounds of lack of personal knowledge, conclusions, and hearsay. *See* Plaintiff's Motion to Strike at 6-12. The court has reviewed each of these objections and finds that each lacks merit. Hijeck's objections to Menlo's summary judgment evidence are overruled.

### 3. *Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence*

Menlo moves to strike portions of the Hijeck affidavit as incompetent summary judgment evidence. *See generally* Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence and Brief in Support ("Defendant's Motion to Strike"). Menlo argues that Hijeck's affidavit contradicts prior deposition testimony, offers improper conclusions, and is "filled with subjective statements." *Id.* at 1.

Menlo first objects to portions of Hijeck's affidavit that relate to his prior work experience. *Id.* at 2. The Fifth Circuit, in *S.W.S. Erectors, Inc., v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996), noted that "[i]t is well settled that this court does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." Hijeck urges that the affidavit and deposition are consistent. *See* Plaintiff's Response to Defendant's Motion to Strike Plaintiff's Summary Judgment Evidence ("Plaintiff's Response") at 1. The court need not address the apparent inconsistencies between Hijeck's deposition testimony and his sworn affidavit, as the disputed evidence does not have a bearing on the outcome of Menlo's motion for summary judgment. This motion is therefore denied as moot.

### 4. *Defendant's Motion for Leave to File Evidence in Support of Defendant's Reply Brief*

Finally, Menlo moves for leave to supplement the evidence in support of its reply brief. *See generally* Defendant's Motion for Leave to File Evidence in Support of Defendant's Reply Brief ("Motion for Leave"). Menlo seeks to add excerpts from the deposition of the plaintiff, Donald Hijeck, as well as excerpts from the deposition of Christine Pedalino, who was deposed after Menlo filed its Motion for Summary Judgment.

Additionally, Menlo seeks to add the affidavits of Richard Tracchio and Lonny Warner to address the plaintiff's contention that he could have remained employed in open positions within the Menlo organization. *See* Motion for Leave at 2. Menlo

argues that because Hijeck raised this issue in his response to summary judgment, Hijeck would not be prejudiced by the submission of the affidavits.

In response, Hijeck argues that Menlo is engaging in summary judgment by "ambush," and that Menlo seeks, in its reply, to "change the basis of its motion for summary judgment." *See* Plaintiff's Response to Defendant's Motion for Leave to File Evidence ("Response to Motion for Leave") ¶ 1. Hijeck cites *Springs Industries, Inc. v. American Motorists Insurance Company*, 137 F.R.D. 238, 240 (N.D. Tex. 1991), for the proposition that a reply brief "is to contain argument, not new supporting materials."

Ultimately, whether the affidavits and deposition testimony are considered by the court has no bearing on the outcome of the motion for summary judgment, and therefore the court will deny Menlo's motion as moot.[3] The Pedalino affidavit provides sufficient admissible evidence to support Menlo's motion for summary judgment.

## B. Legal Standard for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is

---

[3] The court notes, however, that were the court to consider the evidence Menlo seeks to include, the "significant[] prejudice" Hijeck warns of, *see* Response to Motion for Leave at 1, could be remedied simply -- as suggested in the very case Hijeck cites -- with the parties "agree[ing] to the filing of the reply brief and new supporting materials, as well as to submission of a further response and a final reply brief." *Springs Industries*, 137 F.R.D. at 240.

entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also *Celotex*, 477 U.S. at 322-23. The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986). While all of the evidence must be viewed in a light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The movant makes the necessary showing by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex*, 477 U.S. at 323. The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

If the movant makes the required showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company, Limited v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence. See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993). The nonmovant cannot survive a motion for summary judgment, however, by merely resting on the allegations in his pleadings. *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

## C.  Motion for Summary Judgment

Menlo moves for summary judgment on Hijeck's age discrimination claim. Because the same burden-shifting framework applies to the court's analysis under both the ADEA and the TCHRA, *Evans v. City of Houston*, 246 F.3d 344, 349 (5th Cir. 2001), the plaintiff's claims may be considered together at the summary

judgment stage. *Colbert v. Georgia-Pacific Corp.*, 995 F.Supp. 697, 701 (N.D. Tex. 1998).

1. *The ADEA Summary Judgment Standard:*
*Modified* McDonnell Douglas *Approach*

Under the ADEA, "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In a case such as this one, where direct evidence of discrimination is unavailable, the plaintiff can prove discrimination using the "modified *McDonnell Douglas* approach." *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). As modified, *McDonnell Douglas* consists of three stages. First, the plaintiff must establish a *prima facie* case of discrimination, which "creates a presumption that the employer unlawfully discriminated against [him]." *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for discharging the employee. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07 (1993). The defendant's burden is one of production, not proof, and involves no credibility assessments. See, *e.g.*, *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003) (quoting *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 222 (5th Cir. 2000)). If the defendant articulates a legitimate nondiscriminatory reason for the action taken against the plaintiff, the burden shifts back to the plaintiff to

demonstrate that the reason produced was a pretext for discrimination. *Id.* Hijeck may satisfy this burden by showing "that the legitimate reasons offered by [Menlo] were not its true reasons, but were a pretext for discrimination." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U .S. at 253). That is, he must produce sufficient evidence for a reasonable trier of fact to find either that Menlo's proffered explanation is unworthy of credence or that a discriminatory reason more likely motivated the decision to terminate him. See *Burdine,* 450 U.S. at 256. Even without direct evidence of age-motivated discrimination, if Hijeck can provide sufficient evidence to permit a reasonable jury to conclude that Menlo's proffered legitimate nondiscriminatory reason is unworthy of credence, Menlo's motion for summary judgment must be denied.

## 2. Prima Facie *Case*

Initially, it should be noted that a plaintiff "need only make a very minimal showing" to establish a *prima facie* case. *Thornbrough v. Columbus* & *Greenville Railroad Company*, 760 F.2d 633, 639 (5th Cir. 1985), overruled on other grounds by *St. Mary's*, 509 U.S. 502. In the first step, Hijeck must establish a *prima facie* case of discrimination by showing that he was: (1) discharged; (2) qualified for the position; (3) within the protected class; and (4) either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged

because of his age. *Armendariz v. Pinkerton Tobacco Company*, 58 F.3d 144, 149 (5th Cir. 1995), *cert. denied*, 516 U.S. 1047 (1996).

It is undisputed that at the time Hijeck was discharged he was over the age of forty and therefore within the protected class, thus satisfying the first and third elements of the *prima facie* case for employment discrimination. Menlo also concedes that Hijeck was "qualified for the position that was eliminated." *See* Defendant's Motion at 11.

Menlo disputes whether or not Hijeck has established the fourth element of a *prima facie* case -- and because this is a reduction in force case,[4] the appropriate question becomes whether "he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Rachid*, 376 F.3d at 309. In a reduction in force case, a plaintiff can satisfy the fourth element by providing "'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Palasota v. Haggar Clothing Company*,

---

[4]     Hijeck argues that this is not a reduction in force case, specifically that Hijeck's position was not eliminated, but transferred instead to the Coppell facility where the Logistics Manager III position was vacant. Plaintiff's Response at 2. This is a dubious argument that ignores the reality of the situation. There were previously two Logistics Managers overseeing two different warehouses. Once the warehouses were consolidated, Menlo needed only one manager; the fact that the Coppell warehouse position was vacant does not automatically mean that Hijeck was qualified for or entitled to the position. The record shows that the two positions were not identical, and the evidence suggests that Hijeck might not have been qualified for the Coppell position. *See* Pedalino Affidavit ¶¶ 17, 19.

342 F.3d 569, 576 (5th Cir. 2003) (per curiam) (quoting *Nichols v. Loral Vought Systems Corporation*, 81 F.3d 38, 41 (5th Cir. 1996)), *cert. denied*, 540 U.S. 1184 (2004).

Hijeck cites *Thompson v. Origin Technology in Business, Inc.*, 2001 WL 1018748 at *5-6 (N.D. Tex. 2001), for the proposition that Hijeck's termination, coupled with retention of younger employees, is sufficient evidence to meet the fourth prong of his *prima facie* case.  In *Thompson*, the plaintiff employee was demoted when his position was eliminated by the company.  *Id.*  The plaintiff was significantly older than the other three employees who were in comparable positions, though none of them was demoted.  *Id.*  Echoing the Fifth Circuit's reasoning in *Thornbrough*, the court noted that "what is suspicious in reduction-in-force cases is that the employer fired a qualified, older employee but retained younger ones . . .," finding that such a scenario "serves the primary function of the *prima facie* case doctrine."  *Id.* (quoting *Thornbrough*, 760 F.2d at 644).

Hijeck contends that because he applied for, but did not receive, positions within the company, some of which were ultimately given to younger applicants, this evinces that Menlo "intended to discriminate in reaching its decision," further supporting his *prima facie* case.  Plaintiff's Response at 15 (quoting *Thompson*, 2001 WL at *5-6).

Ultimately, the issue of whether or not Hijeck has presented enough evidence to establish a *prima facie* case is a close question. Because Hijeck need make only a "very minimal showing," however, *Thornbrough*, 760 F.2d at 639, the court holds that Hijeck has presented sufficient evidence to satisfy the fourth element of the *prima facie* case.

### 3. *Legitimate Non-Discriminatory Reason*

An employer's decision to eliminate a job position has been repeatedly recognized as a legitimate, non-discriminatory reason for terminating an employee. *Equal Employment Opportunity Commission v. Texas Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996); *Armendariz*, 58 F.3d at 150. Thus, the court finds that Menlo has presented evidence of a legitimate, non-discriminatory reason for Hijeck's termination. The burden now shifts to the plaintiff to prove that Menlo's proffered reason is merely a pretext.

### 4. *Pretext Burden*

Hijeck has provided insufficient evidence demonstrating that Menlo's proffered reason for terminating his position was a mere pretext for age discrimination, or, that Menlo's stated reason, while true, was only one reason for its conduct, and another motivating factor was Hijeck's age. See *Rachid*, 376 F.3d at 312. To succeed at the pretext stage of the modified *McDonnell Douglas* analysis, the plaintiff must do more

than merely discredit the defendant's reasoning; the plaintiff must produce evidence showing that the articulated reason is a pretext. See *St. Mary's*, 509 U.S. at 515-16.

Hijeck has not presented any direct evidence of age discrimination, nor has he indicated that anyone employed by Menlo ever made comments regarding his age. Hijeck has devoted a good deal of time to describing his qualifications, the positions he applied for once his position was eliminated, Menlo's apparent inability to adequately maintain personnel files, the qualifications (or lack thereof) of other applicants, and various facts that ultimately have little to no bearing on the question before the court.

Hijeck's primary argument that Menlo's decision was a pretext is that the proffered reason of reduction-in-force is "incredible" because "[e]veryone at the Dallas facility, except [Hijeck], remained employed at Menlo after the Dallas and Coppell facilities merged." *See* Plaintiff's Response at 17. Even if true, Hijeck's argument fails because Menlo took the same course of action with Hijeck as it did with thirty-seven year old Charles Tracy in Atlanta. Both men were terminated when their positions were eliminated, and the fact that Tracy was outside the protected class supports Menlo's legitimate, non-discriminatory reason for removing Hijeck.

Additionally, Hijeck argues that Menlo's hiring of an unqualified person (Weygandt) for the Coppell position shows pretext. *See* Plaintiff's Response at 19. However, in order to raise a fact issue regarding the question of pretext, Hijeck must

show he was "*clearly* better qualified than younger employees who were retained."

*Walther v. Lone Star Gas Company*, 952 F.2d 119, 123 (5th Cir. 1992) (emphasis in

original). While Hijeck has worked for many years in the industry, it is not clear

from the record that he was head and shoulders above any of the candidates[5] who

were offered the open positions. See *Price v. Federal Express Corp.*, 283 F.3d 715, 723

(5th Cir. 2002) (holding that the losing candidate's qualifications must "leap from

the record and cry out to all who would listen that he was vastly -- or even clearly --

more qualified . . . ").

Next, Hijeck asserts that the "sneaky hiring of a younger replacement shows

pretext." Plaintiff's Response at 20. Menlo did not "replace" Hijeck when it hired

Adam Lapino, age twenty-nine, for the Logistics Manager III position at Coppell.

The Coppell position was distinct from Hijeck's prior position at the Dallas facility.

Furthermore, according to company policy, it was not necessary for Menlo to repost

the position because thirty days had not yet elapsed since the position was vacated by

Weygandt. Defendant's Reply Brief in Support of Its Motion for Summary Judgment

at 19.

Finally, Hijeck points to Menlo's sloppy record-keeping as proof of pretext. *See*

Plaintiff's Response at 22. "An employer's conscious, unexplained departure from its

usual policies and procedures when conducting a [reduction-in-force] may in

---

[5]        During his tenure with CLI and Menlo, Hijeck had received two
disciplinary actions related to his employment responsibilities.

appropriate circumstances support an inference of age discrimination if the plaintiff establishes some nexus between employment actions and the plaintiff's age." *Tyler v. Union Oil Company of California*, 304 F.3d 379, 396 (5th Cir. 2002) (citing *Texas Instruments*, 100 F.3d at 1182). Hijeck has failed to establish such a nexus in this case.

Hijeck's subjective assertions, without more, are not enough to support relief under the ADEA. Furthermore, the ADEA and similar statutes are "not intended to be a vehicle for judicial second-guessing of employment decisions, nor . . . to transform the courts into personnel managers." *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988). While it is evident that Hijeck disagrees with Menlo's decision to hire other candidates for the open positions, it is not the court's role to decide if Menlo's decision was the correct one.

After a thorough search of the record, including the affidavits, deposition transcripts, and exhibits, the court has found no evidence which constitutes, or even suggests, a discriminatory motive on the part of Menlo. In short, Hijeck has failed to present sufficient evidence from which a jury could infer that Menlo's legitimate reason for discharging him was a mere pretext for age discrimination. For that reason, Menlo is entitled to summary judgment on Hijeck's ADEA and TCHRA claims.

### III.  CONCLUSION

For the reasons set forth above, Menlo's motion to strike is **DENIED** as moot, Hijeck's motion to strike is **DENIED**, Hijeck's motion for sanctions is **DENIED** as moot, and Menlo's motion for leave to amend is **DENIED** as moot.  Finally, Menlo's motion for summary judgment is **GRANTED**.

**SO ORDERED**.

February 21, 2008.

_A. Joe Fish_

**A. JOE FISH**
**Senior United States District Judge**